Opinion by
Porter, J.,
The defendant, a resident of Kittanning borough, owned two motor vehicles which had been duly registered and licensed by the highway department of the commonwealth, for the year 1910, in accordance with the provisions of the Act of April 27, 1909, P. L. 265. He had caused these motor vehicles to be operated, for some days in August, 1910, over the streets of plaintiff borough in hauling passengers for hire and pay to and from the Kit-tanning fair. The borough authorities asserted the right to collect from him a license fee for thus using the motor vehicles, under the provisions of a borough ordinance dated April 24, 1900, and brought this action to recover the amount of said fees. The parties agreed upon the facts in a case stated and upon consideration thereof the learned judge of the court below entered judgment in favor of the plaintiff, from which the defendant appeals.
The borough was incorporated under the provisions of the Act of April 3, 1851, P. L. 320, and its several supple *155 ments, and under the general powers conferred by the borough law it had no authority to impose a license fee of this character for the use of the public highways: Millers-town Boro. v. Bell, 123 Pa. 151. The case cited was decided in 1888 and in the following year the Act of April 22, 1889, P. L. 39, conferred upon boroughs “power to enact ordinances establishing reasonable rates of license tax on all hacks, carriages, omnibuses and other vehicles used in carrying persons or property for pay, and limiting the compensation for the same within the limits of said borough.” This act was held to be constitutional, and a borough ordinance passed under it, “to apply- to all vehicles used in carrying persons or property within the borough, or between points within the borough, or between points within the borough and other points and places, whether the owner reside or the vehicles be kept within the borough or not,” was sustained: Washington Borough v. McGeorge, 146 Pa. 248.
The plaintiff borough, on April 24, 1900, adopted and approved an ordinance imposing an annual license tax “on all hacks, carriages, omnibuses, and other vehicles used upon the streets and alleys of said borough in carrying persons or property of any kind for pay.” This ordinance was a valid exercise of municipal authority, at the time of its adoption. The ordinance did not attempt to limit the compensation which might be charged for carrying persons or property within the limits of the borough; it simply imposed a license tax on all vehicles carrying persons or property for pay, without making any provisions regulating the manner in which the business should be conducted. Let it for purposes of this case be assumed that a motor vehicle was a vehicle within the meaning of the act of 1889 and of this ordinance, then it would follow that the vehicles involved in this case were subject to the license tax, unless subsequent legislation has taken vehicles of this character out of the operation of the act of 1889. The invention, development and use of the automobile has, since the act of 1889 became a law, *156 introduced an entirely new element and revolutionized traffic upon all the highways of the state. This modern vehicle, driven by an engine, moves with tremendous force and is capable of developing a high rate of speed. The presence of such vehicles upon the highways of the state made manifest the necessity for police regulation. During the earlier years following the introduction of this class of traffic numerous municipalities of the commonwealth adopted stringent police regulations with regard to the running of such vehicles on the highways. Each municipality had its own code of regulations and the numerous codes varied greatly, some requirements being perhaps unreasonable. This was the condition of affairs when the legislature of the state, in the exercise of the supreme police power with which it was invested, assumed the duty of establishing uniform regulations with regard to this matter and limited the power of local authorities to the ordaining of regulations which were not inconsistent with the uniform code. The Act of April 27, 1909, P. L. 265, is the final expression of the legislative will upon this subject and supersedes all prior legislation and ordinances inconsistent therewith. This statute regulates the use of all public highways within the commonwealth and, with regard to that use, constitutes as a distinct class all those who operate motor vehicles upon the public roads. The power of the legislature to properly classify subjects of legislation, when the classification is founded upon real distinctions in the subjects classified, relevant to the purpose of the legislation, ought at this late date to be accepted as settled. In former times vehicles -drawn by horses moved at a comparatively low rate of speed, and their field of action was limited. The modern vehicle has a much wider field of action, and is capable of traversing the state from end to end in a single day. This essential distinction certainly rendered it desirable that some authority should impose upon the operation of the latter vehicles regulations which should be uniform throughout the commonwealth and universal in their application to *157 all persons who operate such motor vehicles, and this the legislature did in the act of 1909. That statute left the power of the local authorities to ordain regulations with regard to all other vehicles unchanged, but with regard to motor vehicles it enacted a code which applies to the entire state, and in order that that code might not be impaired by local ordinances it expressly provided that no local ordinance inconsistent therewith should be of validity.
The fifteenth section of the act of 1909 enacts that: “No city, county, borough, or township shall have power to enforce or maintain any ordinance, rule or regulation inconsistent with, or fixing a rate of speed lower than that permitted by this act; or require of any person any license tax upon or permit to operate motor vehicles upon the public highways; or the registration of any motor vehicles; and all such local ordinances, rules or regulations now in force shall expire and shall be null and void and of no further effect.” The ordinances which are thus expressly invalidated as to motor vehicles, are clearly those ordinances which prior to that time the municipalities had the authority to enact, for there is no necessity for a statute to invalidate an ordinance that never was valid. The effect of this statute was to deprive the municipalities of any power which under previous legislation they may have had to impose a license tax on motor vehicles; it repealed by implication the Act of April 22,1889, P. L. 39, in so far as that statute had any application to motor vehicles: Sharon Borough v. Hawthorne, 123 Pa. 106. The power of the state to withhold from the municipalities the authority to regulate traffic of this peculiar nature and reserve to the state the right to regulate that traffic through its own officers, cannot be seriously questioned: Wartman v. Philadelphia, 33 Pa. 202. This borough could rely only upon the act of 1889 which empowered it “to enact ordinances establishing reasonable rates of license tax on all hacks, etc., used in carrying persons or property for pay.” The imposition which it was authorized to make was a “license tax,” on the vehicle. *158 The act of 1909 in express terms forbids the borough to “require of any person any license tax upon or permit to operate motor vehicles upon the public highways.” This provision is utterly inconsistent with the continued existence of a power in the borough to impose a “license tax” upon motor vehicles, and as to vehicles of that particular class it constitutes a repeal of the earlier statute. The borough was without authority to require this defendant to take out a license to operate his motor vehicles, and the defendant was entitled to judgment under the terms of the case stated.
■ The judgment is reversed and judgment is now entered in favor of the defendant.